Leibowitz, J.
The New York Civil Liberties Union, organized for the protection of the guarantees of the Bill of Rights, seeks an order directing the court stenographer to furnish it with a transcript of the court’s charge to the jury in the trial of People v. Surrey.
*331 A brief recital of the events involved in the Surrey case will furnish the setting for this application. The salient facts, as presented by the prosecution and undisputed by the defense, are substantially the following:
Surrey, a member of the police department of the City of New York, attired in civilian clothes, was a passenger in a taxicab proceeding along a quiet residential street in Brooklyn. The time was about 2:00 a.m. Suddenly, he heard a loud noise of the crash of glass and the frenzied screams of a woman. A moment before, unknown to Surrey, one of a group of four youths had picked up a heavy metal ash barrel and had hurled it at the ground floor bedroom window of a dwelling house, smashing both upper and lower panes and sending a shower of broken glass into the bedroom and onto the bed in which two small children were sleeping. Were it not for the crossbar of the metal window frame the barrel itself would have plunged into the bedroom. The resounding crash aroused the mother of the youngsters. Instinctively conscious of the danger to her children, she screamed hysterically. It was the noise of the crashing of the glass and the screams of this woman that startled Surrey as he was riding along in the taxicab. The cab stopped. Surrey alighted and observed four male persons rapidly fleeing from the vicinity of this residence. He drew his service revolver and shouted to them to halt; that he was a police officer and would shoot if they did not stop. They paid no heed to his command and continued running. Surrey gave chase. Three times at short intervals the officer fired warning shots, calling out to them to halt. Finally one of the four left the group and cut across to the other side of the street. Surrey fired a fourth shot in his direction which did not take effect. A fifth shot from Surrey’s revolver did strike him and bring him down. It was then discovered that the stricken person was a youth. He succumbed soon thereafter.
There was no claim that Surrey had intended to kill the deceased and the indictment merely charged the commission of the crime of manslaughter in the first degree. (Penal Law, § 1050.)
The crucial issue was whether the officer was justified in firing the shot that caused the death of the deceased. The court charged the jury in substance that the homicide was not justifiable unless (1) a felony had in fact been committed by the person who cast the iron ash barrel into the window; (2) that there was reasonable ground for the officer to believe that the fleeing person he sought to arrest had partaken in the commis *332 sion of the felony and (3) that the shooting was necessary to effect the arrest. (Code Crim. Pro., § 177, subd. 3; Penal Law, § 1055, subd. 3.)
The jury returned a verdict of not guilty.
Following the conclusion of the trial, the New York Post, a newspaper, demanded as a matter of right that the. court order the stenographer to furnish it with a transcript of the minutes of the court’s charge to the jury. This demand was refused on the ground that only parties to an action or proceeding and certain specified public officials are legally entitled to such transcript as a matter of right. (Judiciary Law, §§ 300, 301, 302.)
The Post, still insisting editorially that it was entitled to the transcript as a matter of right, brought a mandamus proceeding at Special Term of the Supreme Court to compel the stenographer to furnish it with the transcript. This court was joined in the proceeding on the allegation, both untrue and- immaterial, that this court had forbidden the stenographer to comply with its demand. (Civ. Prac. Act, art. 78.)
This court and the stenographer interposed what was tantamount to a demurrer, by moving to dismiss the petition, that, on the face thereof the Post had not established any legal right to obtain the relief sought. In the light of the motion to dismiss, there was neither opportunity nor necessity for an answer denying any of the allegations of the petition. (Civ. Prac. Act, § 1293.)
The petition was dismissed at Special Term (Matter of New York Post Corp. v. Leibowitz, 208 Misc. 322).
The Post then appealed to the Appellate Division which court, by unanimous decision, affirmed the ruling of Special Term. (Matter of New York Post Corp. v. Leibowitz, 286 App. Div. 760.)
After the Post had failed at Special Term to establish its claim to the minutes as a matter of right, the Civil Liberties Union then applied to this court for a transcript. It acknowledged that it was not entitled to the transcript as a matter of right, but addressed its application to the court’s discretion. It contended that the court was vested with the necessary power, pursuant to the provisions of section 301 of the Judiciary Law.
Such contention is untenable, for the pertinent part of the said section reads as follows: “ The original stenographic notes must he written out at length by the stenographer, if a judge of the court so directs ”.
The plain import of this section is to require the stenographer, upon order of the court, to furnish the transcript for use by the court. This section is clearly designed to complement sections *333 300 and 302 which include the court in the enumeration of the persons entitled by law to a copy of the transcript. Neither section 302 nor the other related sections of the Judiciary Law vest the court with power to order the stenographer to furnish transcripts to a stranger to the proceedings. Indeed, a holding that the court has such power would be in conflict with the said decisions at Special Term and the Appellate Division, which held in unmistakable terms that the stenographer is under no legal duty to furnish transcripts to those not enumerated in the statutes.
The power to order the stenographer to furnish transcripts is not inherent in the court. Such power is vested in the court and limited in scope by the terms of the statutes.
In Moynahan v. City of New York (205 N. Y. 181) a stenographer sued the City of New York for fees for furnishing three transcripts of his stenographic minutes. Two of the transcripts were furnished to the District Attorney and to the Presiding Justice, day to day during the trial, and were ordered by the District Attorney, one for himself and a second copy at the specific request and order of the presiding Judge. The third copy was ordered by the defendant. However, in view of the day to day transcription of the minutes, a bill was rendered to the city for the third copy at double the statutory rates.
The Court of Appeals held, in the Moynahan case (supra) that in view of the express statutory provisions dealing with the furnishing of the stenographic transcripts to the persons enumerated in the statute, there was no inherent power in the court to order and obligate the city to pay for more than the number of copies authorized by the statute; and specifically, that the statute did not permit payment at double rates for the transcripts, even though the Justice presiding at the trial required that the transcript of the minutes be furnished from day to day.
Said the court at page 192: “ The only theory on which it is attempted to sustain the double charge is that the transcript was furnished from day to day and, therefore, reasonably called for greater compensation. But the statute did not permit this.”
In a separate opinion by Willard Bartlett, J., dissenting in part with which Chief Judge Cullen concurred, the court at pages 193-194, significantly went even further in holding: “ I dissent from the conclusions reached in the prevailing opinion in these cases so far as they are based on the assertion or assumption that the Supreme Court or any justice thereof possesses or ever has possessed the inherent power to charge the public with the expense of furnishing a transcript or tran *334 scripts of the stenographer’s minutes of a trial in any case whatsoever. The official stenographer, however serviceable he may be, was unknown to the trial courts of an early date. Until a comparatively recent period a bill of exceptions had to be made up from the minutes actually kept with his own hand by the judge or justice presiding upon a trial. Stenography is a modern innovation in our courts of law. To say that the power to order the stenographic minutes of a trial inheres in the court is to say that it has always existed, which is contrary to the fact, or that it necessarily grows out of some pre-existing power, which I cannot see and do not concede. I agree with Judge IIiscock’s conclusions so far as the matter is regulated and limited by statute, but I deny that, in the absence of legislation, the courts possess any inherent power over this subject.”
Again, in an entirely separate case, Moynahan v. City of New York (205 N. Y. 194) the Court of Appeals was called upon to deterniine the liability of the city for payment of a stenographer’s transcript furnished to the attorney for a defendant tried for murder in the first degree, but convicted of murder in the second degree. A daily transcript of these minutes for the use of defendant’s attorney was ordered by the presiding Judge. The question in this case was whether the city was obligated to pay for these minutes in view of the fact that they were furnished at the order of the presiding Judge, and that the defendant was. placed on trial for the crime of murder in the first degree. The controlling statute was section 456 of the Code of Criminal Procedure, which provided that minutes shall be furnished to the attorney for a defendant only in a case “ Where the defendant is convicted of a crime punishable by death The Court of Appeals held (supra, p. 196) that “ This section does not cover the claim as the defendant on said trial was only convicted of murder in the second degree.” And further at pages 196, 197: ‘ ‘ The order made by the presiding judge, requiring the respondent to furnish a transcript of his minutes from day to day, even if intended to be applicable to this transcript of the minuteo, does not sustain respondent’s claim. Certainly in view of the specific provisions upon this subject we cannot hold that the justice had any inherent power to order a copy of the minutes to be supplied to the defendant’s attorney at the public expense. The statutes have now been so amended as explicitly to provide that on appeal from a judgment entered on a verdict convicting a defendant of a crime not punishable with death a stenographer may be required to file with the clerk a transcript of his minutes.”
*335 Lacking the inherent power, this court may not by judicial fiat enlarge the limits of the power conferred upon it by statute, thus invading the prerogative, which is solely that of the Legislature.
The Surrey trial was open to the public and the press. The Post reporter, together with representatives of practically all the metropolitan newspaper attended.
Decisions of the highest court of this land are replete with pronouncements of the desirability, under our form of government, of permitting and encouraging the most widespread reporting by the press of what goes on in the courts. (Matter of Oliver, 333 U. S. 257, 270; Maryland v. Baltimore Radio Show, 338 U. S. 912, 930; Craig v. Harney, 331 U. S. 367, 376, 374.) The basic philosophy behind these decisions is that focusing the strong light of public opinion on the proceedings in judicial tribunals is an effective deterrent against oppression and abuses of judicial power. Judges are not and should not be any more immune from criticism than any other officials or departments of governments.
The present statutory provisions insofar as they restrict the press to access to transcripts and the public at large (except in those well-defined instances where public policy dictates otherwise) are not conducive to the policy epitomized by the foregoing decisions of the United States Supreme Court. To implement and give life to the lofty sentiments expressed by the United States Supreme Court, it rests with the Legislature to vest our courts with the necessary power to make available to proper organizations, newspapers and persons, transcripts of the minutes of judicial trials and proceedings; thus to afford that freedom of discussion which is so vital to the preservation of the interests of a democratic people.
The court must take due notice of an observation by way of dictum in Matter of New York Post Corp. v. Leibowits (286 App. Div. 760, 766, supra) that: “ We know of no statute or rule, and none has been called to our attention, which would prohibit respondent Strimpel from delivering the transcript to appellant or to any other person requesting it. In our opinion, respondent Strimpel would not have violated any law had he done so.”
Notwithstanding the declaration of the Appellate Division, neither the Post nor the Civil Liberties Union has reapplied to the stenographer for a transcript.
The integrity and devotion to duty of the stenographers of our courts are beyond question. Nonetheless, a law which puts it within the power of a stenographer (a ministerial public servant) to set himself up as an entrepreneur to vend the fruits of his *336 official labors to those selected by him at his own whim and caprice, is fraught with possibilities of many abuses. For instance, it is not uncommon for the press to publish daily running accounts, in question and answer form, during trials of great public interest. Vested with such absolute power, there is nothing to prevent a stenographer from granting an exclusive access to “ daily copy ” to the newspaper of his selection, and to bar other newspapers from the same privileges. Newspapers so barred would be powerless in any attempt to enforce equality of treatment. Such discriminatory practices would be indefensible indeed. To prevent such occurrences corrective legislation is imperative.
The court is sympathetic with the desire of the Civil Liberties Union to obtain the transcript it seeks. The court regrets that because of lack of power it must deny the application herein, which seeks an order of the court directing the stenographer to furnish it with the transcript.
However, it should be noted that upon this application, and after the Post was unsuccessful at Special Term, this court on its own initiative, made available to counsel for Civil Liberties Union the court’s own copy, not only of the charge but of the entire record in the Surrey case, which were painstakingly studied by him. The court’s own copy is at the disposal of counsel in the future.
The court does possess the power described in section 13 of the Judiciary Law, which provides as follows: “ The court or a judge thereof may, in its or his discretion, upon or without an application for that purpose make an order directing the stenographer to file with the clerk, forthwith or within a specified time, the original stenographic notes taken upon a trial or hearing. ’ ’
In order that the original notes will be preserved intact, the court, in the exercise of its discretion and pursuant to the statute aforesaid, will enter an order directing the stenographer to forthwith file the same with the clerk of the court.
The Post and Civil Liberties Union applications for transcripts have served to focus attention upon the clouds of uncertainty that now enshroud this vital matter, namely, the right of newspapers, organizations and the public to access to transcripts of the minutes of trials and other judicial proceedings." As we have seen, this condition merits early and earnest action by the Legislature.